**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INZA, *et al.* | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-03054-RDM |
| AT&T, INC., *et al.* | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
STAY AND IN PARTIAL OPPOSITION TO PLAINTIFFS' CROSS-MOTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    Plaintiffs' Claims Are Subject To Enforceable Arbitration Agreements. ......................... 2

        A.    Plaintiffs' Enforceability Challenges Improperly Target Their Contracts As A Whole.  4

            1.    The Delegation Clause In The T-Mobile And Verizon Arbitration Agreements Delegates All Challenges To Those Agreements To The Arbitrator. ........................ 4

            2.    Plaintiffs Raise No Challenge Specific To The Arbitration Agreements. ................ 5

        B.    The Arbitration Agreements Are Not Unconscionable. ............................................... 7

            1.    The Arbitration Agreements Are Not Procedurally Unconscionable. ..................... 7

            2.    The Arbitration Agreements Are Not Substantively Unconscionable. ................... 13

                a.    The Arbitration Agreements Do Not Unconscionably Limit Available Remedies................................................................................................. 13

                b.    Defendants' Class Action Waivers Are Not Unconscionable. ............................ 14

        C.    Plaintiffs' Statutory Claims Are Arbitrable. .............................................................. 15

    II.    The Arbitration Agreements Are Enforceable By Non-Signatories. ............................. 17

        A.    Equitable Estoppel Requires Plaintiffs To Arbitrate Their Claims. ........................... 17

        B.    Michael Inza Must Arbitrate His Claims With All Defendants Pursuant To The Co-Defendant Provision In T-Mobile's Arbitration Agreement. ..................................... 20

    III.    VoIP-Pal Concedes It Has Engaged In Claim-Splitting And Does Not Dispute That the Court Can, In Its Discretion, Stay VoIP-Pal's Claims On That Basis. ........................... 20

    CONCLUSION ............................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

\* *Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................14-15

*Aneke v. Am. Express Travel Related Servs., Inc.*,
841 F. Supp. 2d 368 (D.D.C. 2012) ...................................................... 16

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)............................................................................ 17

*Asa v. Verizon Commc'ns, Inc.*,
No. 1:17-CV-256, 2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017) ...................................... 9

\* *AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)......................................................................... 1, 8, 15

*Bennett v. T-Mobile USA, Inc.*,
No. 2:22-CV-01805-LK, 2024 WL 229580 (W.D. Wash. Jan. 22, 2024)........................... 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ............................................................ 12

*Brink v. Cont'l Ins. Co.*,
787 F.3d 1120 (D.C. Cir. 2015)............................................................ 3

\* *Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)...........................................................................5-6

*Chastain v. Robinson-Humphrey Co.*,
957 F.2d 851 (11th Cir. 1992) ............................................................ 6

\* *Citi Cars, Inc. v. Cox Enters., Inc.*,
No. 1:17-cv-22190-KMM, 2018 WL 1521770 (S.D. Fla. Jan. 22, 2018) ...................... 18-19

*Citibank v. Dalessio*,
756 F. Supp. 2d 1361 (M.D. Fla. 2010)................................................. 12

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)........................................................................ 2, 15

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................................. 15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) ................................................................................. 16

* *Gunson v. BMO Harris Bank, N.A.*,
  43 F. Supp. 3d 1396 (S.D. Fla. 2014) .............................................. 18-19

*Heckman v. Live Nation Ent., Inc.*,
  120 F.4th 670 (9th Cir. 2024) ....................................................... 12, 14

* *Hill v. Wackenhut Servs. Int'l*,
  865 F. Supp. 2d 84 (D.D.C. 2012) ..................................................... 3-4, 8

*Johnson v. Hubbard Broad., Inc.*,
  940 F. Supp. 1447 (D. Minn. 1996) ...................................................... 13

*Jung v. Ass'n of Am. Med. Colls.*,
  300 F. Supp. 2d 119 (D.D.C. 2004) ................................................... 16-17

*Lawson v. Life of the S. Ins. Co.*,
  648 F.3d 1166 (11th Cir. 2011) ............................................................ 17

* *Mercadante v. XE Servs., LLC*,
  78 F. Supp. 3d 131 (D.D.C. 2015) ...................................................... 5, 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ................................................................................ 16

*N. Pac. Railway Co. v. United States*,
  356 U.S. 1 (1958) ................................................................................... 17

*Nelson v. Insignia/Esg, Inc.*,
  215 F. Supp. 2d 143 (D.D.C. 2002) ..................................................... 16

*Nino v. Jewelry Exchange, Inc.*
  609 F.3d 191 (3d Cir. 2010) ................................................................. 14

*Owings v. T-Mobile USA, Inc.*,
  978 F. Supp. 2d 1215 (M.D. Fla. 2013) ................................................ 8

* *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ................................................................................. 5

\* *Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................... 4-5

\* *Sakyi v. Estee Lauder Companies, Inc.*,
  308 F. Supp. 3d 366 (D.D.C. 2018) ............................................................. 1, 3

*Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*,
  No. 23-11310, 2025 WL 2105286 (E.D. Mich. July 28, 2025) ............................................. 6

\* *Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) .................................................................................. 15-16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..................................................................................... 19

*Twin Rivers Paper Co. v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019) ......................................................................... 1

*Valdez v. Bags, Inc.*,
  No. 16-20390-Civ-KING/TORRES, 2016 WL 10932513 (S.D. Fla. June 30, 2016)
  ............................................................................................................... 18-19

*Valiente v. StockX, Inc.*,
  645 F. Supp. 3d 1331 (S.D. Fla. 2022) ........................................................ 8, 11

**State Cases**

*Brasington v. EMC Corp.*,
  855 So. 2d 1212 (Fla. Dist. Ct. App. 2003) ................................................... 10

\* *Fla. Woman Care LLC v. Nguyen*,
  329 So. 3d 146 (Fla. Dist. Ct. App. 2021) .................................................. 2, 17

*Fonte v. AT&T Wireless Servs., Inc.*,
  903 So. 2d 1019 (Fla. Dist. Ct. App. 2005) ..................................................... 8

*Gainesville Health Care Ctr., Inc.*, 857 So. 2d 278 (Fla. Dist. Ct. App. 2003) ........................ 13

*Greene v. Johnson*,
  276 So. 3d 527 (Fla. Dist. Ct. App. 2019) ..................................................... 18

*Hobby Lobby Stores, Inc. v. Cole*,
  287 So. 3d 1272 (Fla. Dist. Ct. App. 2020) ..................................................... 8

*Kendall Imports, LLC v. Diaz,*
  215 So. 3d 95 (Fla. Dist. Ct. App. 2017)............................................................... 8

*Koechli v. BIP Int'l, Inc.,*
  870 So. 2d 940 (Fla. Dist. Ct. App. 2004)........................................................... 18

*ManorCare Health Servs., Inc. v. Stiehl,*
  22 So. 3d 96 (Fla. Dist. Ct. App. 2009)............................................................. 14

* *Murphy v. Courtesy Ford, L.L.C.,*
  944 So. 2d 1131 (Fla. Dist. Ct. App. 2006) ................................................. 7, 10

*Powertel, Inc. v. Bexley,*
  743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ................................................. 12, 14

**Docketed Cases**

*Vo-IP-Pal.com, Inc. v. AT&T, Inc.,*
  No. 1:24-cv-03051 (D.D.C.).......................................................................... 2, 20

**Federal Statutes**

* 9 U.S.C. § 2.................................................................................................... 2

## **INTRODUCTION**

In opposing Defendants' Motion to Stay, Plaintiffs Ray Leon, Richard Inza, and Michael Inza concede that they entered into arbitration agreements with Defendants and that their claims are within the scope of those agreements.[1] They argue only that (1) their arbitration agreements are unenforceable for a variety of reasons including alleged fraud in the inducement, unconscionability, and the impropriety of arbitrating statutory claims; and (2) non-signatories cannot enforce an arbitration agreement against a signatory. These arguments are without merit.

Plaintiffs have failed to support their unenforceability arguments entirely. Once it is established that an agreement to arbitrate was formed, the burden shifts to the party opposing enforcement of that agreement to introduce and identify "specific evidence" that the agreement is not enforceable. *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018). Yet Plaintiffs have submitted no evidence. They rely solely on the arguments in their briefs, which "are not evidence." *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019).

But Plaintiffs' arguments would fail regardless. Though they pay lip service to the long-settled rule that they cannot avoid arbitration by challenging the contract as a whole, their brief does exactly that by asserting that their customer agreements as a whole were obtained through fraud. They also raise a substantive unconscionability challenge that the Supreme Court has already rejected. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (the FAA preempts the argument that class-action waivers in consumer contracts are unconscionable).

---

[1] For the remainder of this brief, these individual Plaintiffs are referred to collectively as "Plaintiffs." Plaintiff VoIP-Pal is referred to as VoIP-Pal.

Plaintiffs further ignore or distort Supreme Court precedent that "has rejected *every . . . effort to date*" to "conjure conflicts between the Arbitration Act and other federal statutes," including "the Sherman and Clayton Acts" and "the Racketeer Influenced and Corrupt Organizations Act." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018). And the only opposition they can mount to the non-signatory Defendants' argument for arbitration by equitable estoppel wholly ignores controlling Florida precedent. *Compare Fla. Woman Care LLC v. Nguyen,* 329 So. 3d 146, 150 (Fla. Dist. Ct. App. 2021) ("There are two circumstances under which a nonsignatory can compel arbitration." (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002))), *with* Dkt. 76 (Pls.' Opp'n) at 37–38 (discussing only one).

The bottom line is that Plaintiffs agreed to arbitrate the claims they raise in their complaint, and they have identified no basis in law or fact for the Court to let them out of their agreement. For its part, VoIP-Pal does not oppose Defendants' request to stay its claims in this case pending resolution of its claims in an earlier-filed standalone action, *Vo-IP-Pal.com, Inc. v. AT&T, Inc. et al.*, No. 1:24-cv-03051 (D.D.C.), in order to prevent improper claim-splitting.

The Court should therefore stay this action under Section 3 of the FAA and its inherent powers to stay and deny Plaintiffs' requested declaratory relief.[2]

## ARGUMENT

### I.    Plaintiffs' Claims Are Subject To Enforceable Arbitration Agreements.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he party seeking to stay the case in favor of arbitration bears an initial burden of

---

[2] Plaintiffs' purported "Cross-Motion to Resolve Arbitration as a Threshold Issue" is duplicative of Defendants' Motion for Stay. Plaintiffs also did not confer with Defendants before filing their motion as required by Local Rule 7(m).

demonstrating that an agreement to arbitrate was made." *Sakyi*, 308 F. Supp. 3d at 375 (cleaned up). Once the movant carries this burden by putting forth evidence of an agreement to arbitrate, the burden shifts to the opposing party to raise a "triable issue of fact concerning the existence of the agreement." *Id.* This opposition must "consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence." *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 90 (D.D.C. 2012).

Defendants satisfied their initial burden of establishing that all three Plaintiffs agreed to be bound by at least one carrier Defendant's arbitration agreement. Specifically, Defendants put forth evidence that Mr. Leon agreed to AT&T's and Verizon's arbitration agreements, that Mr. M. Inza agreed to T-Mobile's arbitration agreements, and that Mr. R. Inza agreed to Verizon's arbitration agreements. *See* Dkt. 70-1 at 1–3 (Phillips Decl. ¶¶ 4–11); Dkt. 7-26 at 2–4 (Ninete Decl. ¶¶ 5, 8–12); Dkt. 70-9 at 2–5 (Sanchez Decl. ¶¶ 5–7, 16–17, 19, 22–27). This evidence clearly establishes "that an agreement to arbitrate was made." *Sakyi*, 308 F. Supp. 3d at 375. Plaintiffs conceded this. *See* Dkt. 76 at 44.

The burden thus shifts to Plaintiffs, who do not even attempt to "raise a genuine issue of material fact" regarding the agreements "using evidence comparable to that identified in Fed. R. Civ. P. 56." *Hill*, 865 F. Supp. 2d at 89. Plaintiffs' challenges to the enforceability of the arbitration agreements are simply conclusory allegations of fraud in the inducement of the agreements and unconscionability of the terms of the agreement that do not pass the pleading threshold let alone satisfy their evidentiary burden here. *See, e.g.*, *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (holding that Fed. R. Civ. P. 9(b) requires fraud to be stated with particularity, including with references to "specific fraudulent statements, who made the statements, what was said, when or where these statements were made, and how or why the

alleged statements were fraudulent"). Plaintiffs' unsubstantiated assertions are insufficient to carry their burden. *Hill*, 865 F. Supp. 2d at 96–97.

### A. Plaintiffs' Enforceability Challenges Improperly Target Their Contracts As A Whole.

Plaintiffs first rely on a "fraudulent inducement" theory to escape their obligation to arbitrate their claims with Defendants. They assert that, due to the alleged fraud, either an agreement to arbitrate was not formed or it is not enforceable. Dkt. 76 at 18–19, 43. Supreme Court precedent forecloses their argument because the alleged fraud relates to their customer contracts as a whole and is therefore for the arbitrator to decide.

### 1. The Delegation Clause In The T-Mobile And Verizon Arbitration Agreements Delegates All Challenges To Those Agreements To The Arbitrator.

All three Plaintiffs are bound by either T-Mobile's or Verizon's arbitration agreement, both of which contain a delegation clause. Dkt. 70-18 at 7–8; 70–27 at 7 (¶ 3). Where, as here, there is a delegation clause giving the arbitrator authority to decide issues of arbitrability, courts should only consider challenges going to the delegation clause itself. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

Plaintiffs do not even attempt to challenge the enforceability of the delegation clauses in their agreements to arbitrate with T-Mobile and Verizon. And they concede that courts decide questions about "the enforceability of the [arbitration] clause" only *"absent a valid delegation provision committing such questions to the arbitrator."* Dkt. 76 at 21. Given that the validity of the delegation clauses is undisputed, questions about arbitrability are for the arbitrator.

Plaintiffs' fraudulent inducement theory rests on the argument that Defendants "falsely market[ed] Wi-Fi Calling as included at 'no additional charge' while conditioning it on bundled

cellular services." Dkt. 76 at 17. This is plainly not a challenge to the delegation clause, and Plaintiffs do not argue otherwise. That should be the end of the inquiry. *See Rent-A-Ctr.*, 561 U.S. at 68–70, 72–74 (enforcing delegation provision because plaintiff only challenged the validity of the contract as whole and "[n]owhere in his opposition to Rent–A–Center's motion to compel arbitration did he even mention the delegation provision"); *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 139–41 (D.D.C. 2015) (enforcing delegation provision where plaintiff never challenged delegation provision specifically because for a court to consider an enforceability challenge, "it must be directed specifically at the delegation agreement and not at 'another provision of the contract, or to the contract as a whole'").

### 2.    Plaintiffs Raise No Challenge Specific To The Arbitration Agreements.

Even if there were no delegation clause, however, Plaintiffs' fraudulent inducement argument fails because it is merely a challenge to the contract as a whole. When evaluating the enforceability of an agreement to arbitrate, courts should not consider "claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 406 (1967) (enforcing arbitration agreement notwithstanding plaintiff's claim that defendant fraudulently represented it was solvent to induce agreement generally). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

Although Plaintiffs make the conclusory assertion that the alleged "fraud" was "clause-specific," Dkt. 76 at 15, "targeted inducement . . . to secure assent to arbitration," *id.* at 24, and intended to "deceiv[e] subscribers into accepting embedded arbitration clauses without awareness of their suppressive effect on redress for the fraud," *id.*, they have no support for these statements. Their Opposition ultimately makes clear that their challenge goes to the contracts as

a whole, not the arbitration agreements.  *See, e.g., id.* at 10 (arguing the alleged "deception undermines the entire agreement—including the arbitration provision buried within it"); *id.* at 24 ("The Complaint alleges that the arbitration provisions were embedded within and induced by the same fraudulent 'no charge' misrepresentations that portrayed the service terms as cost-free and beneficial, thereby deceiving subscribers into accepting embedded arbitration clauses"); *id.* at 43 (arguing "deception induced consent to a broader contract that included the arbitration clause"); *see also id.* at 12, 13–14, 24, 32 (all similar).

Plaintiffs' insistence that fraud claims affecting the entire agreement are to be decided by the Court is a complete misstatement of the law.  Twice Plaintiffs cite *Buckeye* for a proposition that is the opposite of what *Buckeye* says.  *See* Dkt. 76 at 14, 43; *compare id.* at 43 ("deception [that] induced consent to a broader contract that included the arbitration clause . . . voids the arbitration agreement"), *with Buckeye Check Cashing*, 546 U.S. at 440 (rejecting the argument that an "arbitration provision" can be "rendered invalid" by a challenge to "the [a]greement as a whole").  Plaintiffs also incorrectly quote the Eleventh Circuit in *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 855–56 (11th Cir. 1992), as stating that when "fraud permeates the entire agreement—including the arbitration clause—the court must intervene." Dkt. 76 at 32. This language appears nowhere in the *Chastain* opinion or in any other opinion that Defendants could identify.[3]

---

[3] In light of this example and numerous others where Plaintiffs have presented non-existent quotes or incorrect characterizations of the law—including those that were the subject of Plaintiffs' recent "stipulation" withdrawing erroneous paragraphs from the Second Amended Complaint (Dkt. 82)—Defendants respectfully suggest that the Court may wish to require lead counsel for Plaintiffs going forward to certify that he has reviewed each filing Plaintiffs make and ensured that each assertion is properly supported.  Plaintiffs' filings in this case have been excessively long and often confusing, they have multiplied the proceedings, they have caused unnecessary cost to Defendants, and they may well be the product of generative AI without sufficient attorney review.  *See Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-11310, 2025 WL 2105286 (E.D.

## B. The Arbitration Agreements Are Not Unconscionable.

Next, Plaintiffs argue that Defendants' arbitration agreements are unconscionable. As a threshold matter, because T-Mobile's and Verizon's arbitration agreements delegate arbitrability to the arbitrator and apply to all Plaintiffs, *see supra* Section I.A.1, their unconscionability argument is for the arbitrator to decide. *See* Dkt. 70 at 14, 24–26, 28, 30; *see also Mercadante*, 78 F. Supp. 3d at 143 (finding that "the Court cannot consider . . . arguments" that the "agreement as a whole was unconscionable or even that the arbitration provision was unconscionable" because the parties had delegated questions of arbitrability to the arbitrator).

But even if the Court were to determine unconscionability here, it should reject Plaintiffs' argument. Unconscionability requires showing both procedural and substantive unconscionability. *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. Dist. Ct. App. 2006).[4] Plaintiffs can show neither.

### 1.    The Arbitration Agreements Are Not Procedurally Unconscionable.

To establish procedural unconscionability, Plaintiffs bear the burden of proving they had no "meaningful choice" when the arbitration agreements were entered into. *Murphy*, 944 So. 2d at 1134 ("The party seeking to avoid the arbitration provision has the burden to establish unconscionability."). In making this assessment under Florida law, courts consider the following:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the

Mich. July 28, 2025) (imposing Rule 11 sanctions on counsel for submitting briefs containing fabricated quotations and explanatory parentheticals generated by AI, emphasizing the duty of attorneys to independently verify case law).

[4] Florida law applies to all of the arbitration agreements at issue in this case, Dkt. 70 at 20, which Plaintiffs do not contest.

> complaining party's ability and opportunity to understand the disputed
> terms of the contract.

*Hill*, 865 F. Supp. 2d at 94 (quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th

Cir. 2010). Plaintiffs fall far short of meeting their burden here. Their assertion, for example,

that the "arbitration clauses were presented in non-negotiable, adhesive contracts with no opt-out

and were buried in online clickwrap terms," Dkt. 76 at 43, is factually untrue and legally

irrelevant. *See AT&T Mobility LLC*, 563 U.S. at 346–47 ("[T]he times in which consumer

contracts were anything other than adhesive are long past.").

First, Plaintiffs assert that the arbitration agreements were presented on a "take-it-or-

leave-it basis." Dkt. 76 at 14, 34. As an initial matter, T-Mobile's arbitration agreement contains

an opt-out provision; Mr. M. Inza simply did not exercise his opt-out right. *See* Dkt. 70-9 at 5

(Sanchez Decl. ¶ 29); Dkt. 70-18 at 6 (T-Mobile opt-out provision). "The caveat that the

consumer may opt-out of arbitration within thirty days of signing the agreement obviates any

argument of procedural unconscionability." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d

1215, 1224 (M.D. Fla. 2013) (enforcing T-Mobile's arbitration agreement and concluding it is

not unconscionable); *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1339–41 (S.D. Fla. 2022)

(finding arbitration provision in online agreement not procedurally unconscionable where it

contained an opt-out provision).

Moreover, a "take-it-or-leave-it" contract is not inherently procedurally unconscionable.

*Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 109–10 (Fla. Dist. Ct. App. 2017); *Hobby Lobby*

*Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275–76 (Fla. Dist. Ct. App. 2020). Plaintiffs had a

meaningful choice in whether to accept the contract. For example, they could have chosen to

contract with T-Mobile and opt out of arbitration. *See, e.g.*, *Fonte v. AT&T Wireless Servs., Inc.*,

903 So. 2d 1019, 1026–27 (Fla. Dist. Ct. App. 2005) (finding AT&T's arbitration agreement not

procedurally unconscionable where plaintiff was provided notice of the terms and had the freedom to choose other wireless providers); *Asa v. Verizon Commc'ns, Inc.*, No. 1:17-CV-256, 2017 WL 5894543, at *5 (E.D. Tenn. Nov. 29, 2017) (finding Verizon's arbitration clause not procedurally unconscionable where plaintiff presented no evidence that he tried to obtain services from other carriers or that he could not obtain cellular services without an agreement to arbitrate).

Second, Plaintiffs' assertion that the arbitration agreements were "buried in fine print . . . with no clear warnings or plain language," Dkt. 76 at 34, is blatantly false. AT&T's service agreement begins with the following language, which describes the arbitration agreement in bold: "By activating, using, or paying for any AT&T products or services . . . you agree to be bound by this Consumer Service Agreement . . . . **Please read this Agreement carefully. It requires you and AT&T to resolve disputes through arbitration on an individual basis rather than jury trial or class actions.**" Dkt. 70-8 at 2 (§ 1.0) (emphasis in original).

Likewise, T-Mobile's terms and conditions state on the first page that there is an arbitration agreement, and the arbitration agreement itself is bolded and capitalized. Dkt. 70-18 at 2 ("These Terms & Conditions ('T&Cs') contain important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury trials. By Accepting these T&Cs, you agree . . . to be bound by these provisions."); *id.* at 5 (containing bolded and capitalized arbitration agreement). The arbitration agreements included in T-Mobile's equipment installment plans ("EIPs") with Mr. M. Inza are likewise conspicuous and capitalized. Dkt. 70-25 at 4 (containing capitalized arbitration agreement).

And Verizon's arbitration agreement is introduced in the first paragraph of its customer agreement in bold font: "**Thanks for choosing Verizon.  Review this Customer Agreement ('Agreement') carefully, as you'll find important information about your wireless Service and our business relationship, including . . . our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.**" Dkt. 70-27 at 2 (emphasis in original).

Under Florida law, arbitration clauses like these, which are conspicuously shown and readily readable, are not procedurally unconscionable.  *See Brasington v. EMC Corp.*, 855 So. 2d 1212, 1218 (Fla. Dist. Ct. App. 2003) (arbitration clause conspicuously shown with header in bold not procedurally unconscionable); *Murphy*, 944 So. 2d at 1132–33, 1135 (no procedural unconscionability where arbitration clause in same typeface as other provisions of the contract).

Third, the Opposition states without citation to any supporting evidence that the arbitration clauses were "buried in online clickwrap terms." Dkt. 76 at 43.  This statement is plainly incorrect as to all three individual Plaintiffs.

***Mr. Leon:***  Mr. Leon repeatedly accepted AT&T's arbitration clause, including when he signed documents stating he reviewed and agreed to the terms in the "Wireless Customer Agreement (including limitation of liability and arbitration provisions)," which were "made available to [him] prior to [his] signing," Dkt. 70-–2 at 2–8 (Leon Records of Signature).  Dkt. 70-1 at 1–3 (Phillips Decl. ¶¶ 4–11).  He was also made aware that changes had been made to the arbitration agreement on the first page of certain bills and directed to where he could review the changes.  Dkt. 70-5 at 4, 70-6 at 2.  Mr. Leon also accepted Verizon's arbitration clause most recently when he purchased a new iPhone and service plan.  Dkt. 70-26 at 2 (Ninete Decl. ¶ 5).

The receipt on its face states that he had read and agreed to "the Verizon Customer Agreement including settlement of dispute by arbitration instead of jury trial."  Dkt. 70-28 at 4.

    *Mr. M. Inza:*  Mr. M. Inza repeatedly accepted T-Mobile's arbitration clause, including when he completed transactions in-store and signed receipts that on their face (1) incorporated the full terms and conditions and (2) stated "T-Mobile REQUIRES ARBITRATION OF DISPUTES," Dkt. 70-19 at 2, 70–20 at 2, with enumerated exceptions inapplicable here, Dkt. 70-9 at 2–3 (Sanchez Decl. ¶¶ 5–6, 16–18).  Mr. M. Inza would have been presented with the complete terms and conditions before signing for his transactions.  Dkt. 70-9 at 3–4 (Sanchez Decl. ¶ 18).  He also signed EIPs (via DocuSign) that on their face contained an arbitration agreement in capital letters.  Dkt. 70-9 at 4–5 (Sanchez Decl. ¶¶ 22–28), 70-21 at 5–6, 70-22 at 4, 70-23 at 4, 70-24 at 4, 70-25 at 4.

    *Mr. R. Inza:*  Mr. R. Inza repeatedly accepted Verizon's arbitration clause, including, for instance, when he entered into multiple Installment Loan Agreements, Dkt. 70-26 at 3–4 (Ninete Decl. ¶¶ 9–12), which expressly incorporated Verizon's complete Customer Agreement, including the dispute resolution (arbitration) provisions.  Dkt. 70-32 at 3; *see also* Dkt. 70-33 at 3; 70-34 at 3.  The signature page specifically affirmed that Mr. R. Inza did "agree to the Verizon Customer Agreement (CA), including . . . settlement of disputes by arbitration instead of a jury trial."  Dkt. 70-32 at 5.

    Regardless, it is of no moment that the arbitration provisions were allegedly agreed to via clickwrap.  *See Valiente*, 645 F. Supp. 3d at 1338 ("'In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts.'" (quoting *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006) (omission in original))).

Fourth, Plaintiffs' argument that the service agreements are lengthy and difficult to comprehend is not a basis to set them aside. Dkt. 76 at 28; *see Citibank v. Dalessio,* 756 F. Supp. 2d 1361, 1367–68 (M.D. Fla. 2010) ("[A] party who signs an instrument is presumed to know its contents . . . . He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions." (omission in original) (quoting *Linville v. Ginn Real Estate Co., LLC*, 697 F.Supp.2d 1302, 1308–09 (M.D. Fla. 2010))). Indeed, Plaintiffs do not even suggest that they were unaware of their obligations to arbitrate, though that alone would be insufficient to invalidate the agreements.

Finally, the cases Plaintiffs point to as examples of procedural unconscionability are inapposite to the facts present here. *See, e.g.*, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682 (9th Cir. 2024) (applying California law to case where (1) plaintiffs either had to accept the arbitration agreement or have nowhere to purchase tickets on the primary market; (2) defendant reserved the right to unilaterally change its terms and conditions retroactively and without notice to consumers; and (3) defendant asserted that merely browsing a website is acceptance of an agreement to arbitrate); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 853–58 (9th Cir. 2022) ((1) plaintiffs' agreement to arbitrate was predicated on their clicking past a screen on defendants' websites where two lines of inconspicuous text stated they were agreeing to hyperlinked terms and conditions; (2) plaintiffs did not click any button or check any box assenting specifically to the terms and conditions; and (3) plaintiffs alleged they did not see the line of text referring to the terms and conditions); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574–75 (Fla. Dist. Ct. App. 1999) ((1) arbitration agreement had been mailed to plaintiff alongside a bill after the complaint was filed and appeared on its face to be only a restatement of the original

terms and conditions of service; (2) the mailing did not make clear that an arbitration agreement was being added to the terms and conditions; and (3) terminating service with the defendant may not have been "economically feasible" because consumer had purchased equipment that only worked with defendant's cellular network and could not port their number to a new provider).

### 2.    The Arbitration Agreements Are Not Substantively Unconscionable.

Nor can Plaintiffs establish substantive unconscionability, which requires that the arbitration agreements "shock the judicial conscience." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284–85 (Fla. Dist. Ct. App. 2003).

### a.    The Arbitration Agreements Do Not Unconscionably Limit Available Remedies.

Plaintiffs argue that the arbitration clauses are substantively unconscionable because they limit available remedies for the Sherman Act and RICO claims. Dkt. 76 at 32. But the agreements at issue here provide that an arbitrator can award the same damages and relief as a court. *See* Dkt. 70-8 at 4 (§ 1.3.2.3); Dkt. 70-18 at 6–8; Dkt. 70-27 at 6–9.

To the extent the arbitration agreements contain limitations regarding liability, such limitations apply in court or in arbitration and only to the extent permitted by law. *See* Dkt. 70-8 at 7 (§ 1.7); Dkt. 70-18 at 9; Dkt. 70-27 at 6. Plaintiffs are free to argue to the arbitrator that these limitations are not enforceable, just as they would be free to argue the same to a court. *Bennett v. T-Mobile USA, Inc.*, No. 2:22-CV-01805-LK, 2024 WL 229580, at *10 (W.D. Wash. Jan. 22, 2024) (finding arbitration clause not substantively unconscionable partly because its limitation of liability clause "contains a disclaimer that it applies only '[t]o the extent permitted by law[.]'" (alterations in original)); *Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1450, 1461–62 (D. Minn. 1996) (finding arbitration agreement that limited awards to out-of-pocket

damages "to the extent permitted by law" did not obstruct plaintiff's ability to effectively argue to the arbitrator what damages she was entitled to under the law).

As with Plaintiffs' cited support for their procedural unconscionability arguments, the cases they rely upon for substantive unconscionability are readily distinguishable on their facts. *See, e.g., Powertel Inc.*, 743 So. 2d at 576–77 (containing no exception relating to arbitrator's ability to award presumptively disallowed relief); *Heckman,* 120 F.4th at 683–89 (declining to enforce arbitration agreement where the applicable arbitral rules—created by a new arbitration tribunal called New Era—were antithetical to due process and non-compliant with procedural requirements under California law); *Nino v. Jewelry Exchange, Inc.* 609 F.3d 191, 202–05 (3d Cir. 2010) (holding arbitration agreement substantively unconscionable due to procedural terms that Plaintiffs do not challenge here, such as a short filing window, the division of fees, and the arbitrator selection process); *see also* Dkt. 70-8 at 4 (AT&T arbitration agreement providing for arbitration by American Arbitration Association); Dkt. 70-18 at 7 (T-Mobile agreement providing for same); Dkt. 70-27 at 7 (Verizon agreement providing for same); *ManorCare Health Servs., Inc. v. Stiehl,* 22 So. 3d 96, 99–100 (Fla. Dist. Ct. App. 2009) (declining to follow *Powertel,* explaining "[i]f the arbitrator determines the remedial limitations to be unenforceable, the limitations may be severed from the remainder of the agreement").

**b. Defendants' Class Action Waivers Are Not Unconscionable.**

Plaintiffs further baselessly argue that the arbitration agreements are substantively unconscionable given their inclusion of class waivers. Dkt. 76 at 31. However, class action waivers are appropriate, routinely enforced, and have no bearing on the enforceability of the arbitration agreements at issue. Dkt. 76 at 28–30. As the Opposition acknowledges, the Supreme Court has rejected arguments that an arbitration provision is unenforceable based on the inclusion of a waiver of class action rights. *See, e.g., Am. Express Co. v. Italian Colors Rest.,*

570 U.S. 228, 234 (2013) (In light of their class action waiver, "the parties here agreed to arbitrate pursuant to that 'usual rule'" that "'litigation is conducted by and on behalf of the individual named parties only'" and "it would be remarkable for a court to erase that expectation." (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979))); *AT&T Mobility LLC*, 563 U.S. at 344 (affirming enforceability of class action waivers); Dkt. 76 at 26.

Plaintiffs attempt to gloss over this binding precedent by arguing that class action waivers in this case would improperly obstruct the enforcement of statutory antitrust rights, Dkt. 76 at 15, but the Supreme Court concluded in *Italian Colors* that "the antitrust laws do not evince an intention to preclude a waiver of class-action procedure," 570 U.S. at 234 (cleaned up). *Italian Colors* further confirms that Plaintiffs' reliance on Rule 23(b)(3) to suggest a right to a class action proceeding is incorrect, Dkt. 76 at 39, stating that "Rule 23 [does not] establish an entitlement to class proceedings for the vindication of statutory rights," 570 U.S. at 234. Plaintiffs also ignore that the class action waiver in each carrier's service agreement applies equally in arbitration and in court; it has nothing to do with arbitration.

### C. Plaintiffs' Statutory Claims Are Arbitrable.

Plaintiffs repeatedly and incorrectly assert that issues of public policy preclude arbitration of statutory claims. Dkt. 76 at 19, 26, 33, 43, 44. This argument is frivolous, as the Supreme Court has repeatedly recognized that antitrust and RICO claims can be resolved through arbitration and has enforced arbitration agreements involving such claims. *Epic Sys.*, 584 U.S. at 516; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 28 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement . . . . [W]e have held enforceable arbitration agreements relating to claims arising under the Sherman Act . . . [and]. . . RICO."); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 240–42 (1987) ("In sum, we

15

find no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO claims.").

Contrary to Plaintiffs' claims, the complexity of the statutory claims is irrelevant to their arbitrability.  Dkt. 76 at 19, 26, 39; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985) (finding that the "potential complexity [of antitrust claims] should not suffice to ward off arbitration"); *Shearson/Am. Express, Inc.*, 482 U.S. at 239 (finding same for RICO claims).

Courts, including in this Circuit, have rejected "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'"  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89–90 (2000); *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 152 (D.D.C. 2002); *see also Aneke v. Am. Express Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 377–78 (D.D.C. 2012) (rejecting argument that individual arbitration cannot provide meaningful relief for statutory claims).

Plaintiffs mischaracterize *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004), and argue that complex antitrust conspiracies under the Sherman Act should not be arbitrated.  Dkt. 76 at 19.  In *Jung*, the court rejected all of the plaintiffs' "Countervailing Statutory or Policy Concerns," 300 F. Supp. at 147–54, but determined that the unique circumstances of that case meant that "compelling arbitration of any part of the conspiracy claim would undermine the purposes of the Sherman Act by improperly compartmentalizing plaintiffs' single conspiracy claim."  *Id.* at 154.  Specifically, the court held that two of the thirty defendants could not seek to arbitrate one element of a tripartite conspiracy claim while the other two elements were litigated in court.  The court's holding had nothing to do with preventing arbitration of a "complex" antitrust conspiracy claim in its entirety, and the *Jung* court's concern

about "compartmentalizing" the various components of a single conspiracy claim are not present here. *Jung*, 300 F. Supp. 2d at 154–55. All Defendants seek to arbitrate the entirety of all of Plaintiffs' claims.

Finally, Plaintiffs cite four antitrust decisions in support of their request that the Court set aside their arbitration agreements, Dkt. 76 at 12–13 (discussing *N. Pac. Railway Co. v. United States*, 356 U.S. 1 (1958)); 19–20 (invoking *stare decisis*), but those cases have nothing to do with whether antitrust claims can be arbitrated.

## II.    The Arbitration Agreements Are Enforceable By Non-Signatories.

### A.    Equitable Estoppel Requires Plaintiffs To Arbitrate Their Claims.

Plaintiffs concede that non-signatories to arbitration agreements may compel arbitration with signatories through equitable estoppel, but seek to avoid its application here by misstating Florida law. Dkt. 76 at 37–38; *see also* Dkt. 70 at 34–37; *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (holding equitable estoppel is a question of state law and abrogating prior cases applying "federal law"); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011) (collecting and recognizing the abrogation of federal cases by *Arthur Andersen* to the extent inconsistent with state law).

They argue that enforcing an arbitration agreement through equitable estoppel requires both that (1) "'a signatory to a contract containing the arbitration clause raise[] allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more of the signatories to the agreement,'" Dkt. 76 at 37 (emphasis omitted) (quoting *Greene v. Johnson*, 276 So. 3d 527, 531 (Fla. Dist. Ct. App. 2019)), and (2) "the plaintiff's claims against the non-signatory are grounded in the contractual agreement," Dkt. 76 at 37–38. But Florida law is clear that either of these grounds is independently sufficient for a non-signatory to enforce an arbitration agreement against a signatory. *See, e.g.*, *Fla. Woman Care LLC*, 329 So. 3d at 150

17

(setting out the two circumstances in which equitable estoppel applies); *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004) (same); *see also* Dkt. 70 at 35–36.

Florida courts consistently enforce arbitration agreements between signatories and non-signatories on the basis that the signatory's claims allege substantially interdependent and concerted misconduct among non-signatory and signatory defendants. *See, e.g.*, *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1403 (S.D. Fla. 2014) (applying equitable estoppel and collecting cases where equitable estoppel applied under Florida law because of allegations of concerted misconduct); *Citi Cars, Inc. v. Cox Enters., Inc.*, No. 1:17-cv-22190-KMM, 2018 WL 1521770, at *11 (S.D. Fla. Jan. 22, 2018) (applying equitable estoppel under Florida law given allegations of concerted misconduct); *Valdez v. Bags, Inc.*, No. 16-20390-Civ-KING/TORRES, 2016 WL 10932513, at *5–6 (S.D. Fla. June 30, 2016) (same).  Plaintiffs cite no case applying Florida law to the contrary and in fact cite cases undermining their argument.  *See Greene*, 276 So. 3d at 530–31 (cited by Plaintiffs and stating that "Non-signatories to a contract containing an arbitration provision . . . may compel arbitration of claims brought by a signatory based on the doctrine of equitable estoppel if the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract.").

Plaintiffs do not contest that they allege "substantially intertwined and concerted misconduct" by Defendants.  *Citi Cars*, 2018 WL 1521770, at *11.  Nor could they, as they assert in the Second Amended Complaint that Defendants acted with a "common purpose," Dkt. 10-4 at 11 (Second Am. Compl. ¶ 4), "as a single enterprise, even an association-in-fact engaging in coordinated conduct," *id.* at 20 (Second Am. Compl. ¶ 19), and with a "concerted plan," *id.* at 30 (Second Am. Compl. ¶ 48).  "[E]ach claim is lodged against all . . . Defendants without differentiation," *Citi Cars*, 2018 WL 1521770, at *11, drawing no distinction between

Defendants in the legal theories and facts it puts forward. Dkt. 10-4 at 181–211 (Second Am. Compl. ¶¶ 537–642).

Plaintiffs seek to avoid the application of equitable estoppel by claiming that "[t]here is no legal basis for non-signatories to compel arbitration of RICO, Sherman Act § 2, or Telecommunications Act claims rooted in public rights." Dkt. 76 at 38. However, courts apply equitable estoppel to permit non-signatories to enforce arbitration agreements against signatories alleging statutory claims, including the types of claims advanced here. *Gunson,* 43 F. Supp. 3d at 1403 (finding equitable estoppel required arbitration of RICO claims with non-signatory); *Citi Cars*, 2018 WL 1521770, at *11 (finding equitable estoppel required arbitration of Sherman Act § 2 claims with non-signatory); *see also Valdez*, 2016 WL 10932513, at *6 (finding equitable estoppel required arbitration of Fair Labor Standards Act claims with non-signatory).

Finally, Plaintiffs incorrectly argue that Defendants cannot enforce each other's arbitration agreements because doing so would violate the FAA, which they assert "limits arbitration to individualized proceedings, not consolidated or group enforcement." Dkt. 76 at 41. Not only does this misstate the law, as they later implicitly acknowledge in quoting from *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("a party may not be compelled under the FAA to submit to class arbitration *unless there is a contractual basis for concluding that the party agreed to do so*" (emphasis added)), but it also mischaracterizes the relief sought by Defendants. Defendants seek a stay pending individual arbitration with Plaintiffs, not an order compelling class or group arbitration, which is in fact prohibited under each Defendant's arbitration agreement. Dkt. 70-8 at 5 (§ 1.3.1); 70-18 at 8; 70-27 at 7.

**B. Michael Inza Must Arbitrate His Claims With All Defendants Pursuant To The Co-Defendant Provision In T-Mobile's Arbitration Agreement.**

Plaintiffs do not contest that Mr. M. Inza is also required to arbitrate his claims with all Defendants under the co-defendant provision in T-Mobile's arbitration agreements.  *See* Dkt. 70 at 37.  Both T-Mobile's T&Cs and its EIPs require arbitration of "any claims against other parties relating to Services, Products, or Devices provided or billed to you . . . whenever you also assert claims against us in the same proceeding."  *E.g.*, Dkt. 70-18 at 6; 70-25 at 4.

**III.    VoIP-Pal Concedes It Has Engaged In Claim-Splitting And Does Not Dispute That the Court Can, In Its Discretion, Stay VoIP-Pal's Claims On That Basis.**

Plaintiff VoIP-Pal does not deny that it has engaged in claim-splitting by filing the same claims based on the same facts both in this case and in its earlier-filed standalone action, *VoIP-Pal.com, Inc. v. AT&T, Inc.*, No. 1:24-cv-03051 (D.D.C.).  In fact, the Opposition concedes that it has done so: "VoIP-Pal's individual suit and the putative class action arise from the same operative facts and legal theories . . . ."  Dkt. 76 at 38.

VoIP-Pal also does not oppose Defendants' request to stay its claims in this case pending resolution of its claims in the earlier-filed standalone action.  Nor does VoIP-Pal respond to the case law cited in the Motion that claim-splitting is improper and that a district court has discretion to stay the split claims in favor of the first-filed claims.  *See* Dkt. 70 at 43–46 (collecting cases).

Finally, VoIP-Pal also does not dispute that Section 3 of the FAA gives the Court discretionary authority to stay the entirety of this action, not just the arbitrable claims.  *See* Dkt. 70 at 38 (collecting cases).

The Court should therefore stay VoIP-Pal's claims in this action pending resolution of the earlier-filed action, in which Defendants' motions to dismiss are currently pending.  Carrier Defendants' Motion to Dismiss, *VoIP-Pal.com, Inc. v. AT&T, Inc.*, No. 1:24-cv-03051 (D.D.C. Aug. 1, 2025), Dkts. 80, 80-1; Individual Defendants' Motion to Dismiss, *VoIP-Pal.com, Inc. v. AT&T,*

*Inc.*, No. 1:24-cv-03051 (D.D.C. Aug. 1, 2025), Dkts. 81, 81-1.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to stay this case in its entirety pending arbitration of Plaintiffs' claims and resolution of VoIP-Pal's earlier-filed individual action and deny Plaintiffs' request for declaratory relief.

Respectfully submitted on this 5th day of August, 2025,

*/s/ David I. Gelfand*
David I. Gelfand (Bar No. 416596)
Daniel P. Culley (Bar No. 988557)
Elsbeth Bennett (Bar. No. 1021393)
Washington, DC 20037
Telephone: 202.974.1690
Facsimile: 202.974.1999
dgelfand@cgsh.com
dculley@cgsh.com
ebennett@cgsh.com

*Counsel for T-Mobile US, Inc., Marcelo Claure,
Srikant M. Datar, Srinivasan Gopalan, James J.
Kavanaugh, Letitia A. Long, Mark Nelson,
Mike Sievert, Teresa A. Taylor, Kelvin R.
Westbrook.*

*/s/ Megan E. Gerking*
Megan E. Gerking (Bar No. 1027190)
Bradley S. Lui (Bar. No. 425033)
Aaron Heath Scheinmann (Bar No. 1736172)
MORRISON FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
Telephone: 202.887.6924
Facsimile: 202.887.0763
blui@mofo.com
mgerking@mofo.com
ascheinman@mofo.com

Michael B. Miller (Bar ID: NY0140)
MORRISON & FOERSTER LLP 250 W 55th
Street New York, NY 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900
mbmiller@mofo.com

*Counsel for Verizon Communications Inc.,
Cellco Partnership dba Verizon Wireless,
Verizon Services Corp., Verizon Business
Network Services LLC, Vandana Venkatesh,
Vittorio Colao, Shellye L. Archambeau, Mark T.
Bertolini, Roxanne S. Austin, Melanie L.
Healey, Laxman Narasimhan, Clarence Otis,
Jr., Daniel H. Schulman, Rodney E. Slater,*

*Carol B. Tomé, Hans Vestberg, and Gregory G. Weaver.*

*/s/ Russell H. Falconer*
Russell H. Falconer (Texas Bar No. 24069695)
(*Pro Hac Vice*)
Ashley Johnson (Texas Bar No. 24067689)
(*Pro Hac Vice*)
Cody B. Johnson (Texas Bar. No. 24125638)
(*Pro Hac Vice*)
Savannah Silver (Texas Bar No. 24129020)
(*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: (214) 698-3100
Fax: (214) 571-2900
RFalconer@gibsondunn.com
AJohnson@gibsondunn.com
CBJohnson@gibsondunn.com
SSilver@gibsondunn.com

Kristen Limarzi (Bar No. 485011)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.887.3518
Facsimile: 202.467.0539
KLimarzi@gibsondunn.com

*Counsel for AT&T Defendants*